STATE of Minnesota, Respondent,

v.

Clyde Rae NORTON, Appellant.

No. 82–444.

Supreme Court of Minnesota.

Dec. 30, 1982.

C. Paul Jones, Public Defender, and Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., and Vernon E. Bergstrom, Chief, Appellate Div., Minneapolis, for respondent.

AMDAHL, Chief Justice.

This is a criminal appeal from judgment of conviction which raises only one issue, whether there were severe aggravating circumstances present justifying a durational departure of greater than two times the presumptive sentence established by the Minnesota Sentencing Guidelines. We hold that there were severe aggravating circumstances present, and we affirm the sentence.

On September 25, 1981, a 5-year-old Minneapolis girl was playing in front of her home when a man whom she did not know picked her up, put her in a car and drove off. The victim's sister, who saw the incident, reported what had happened to the children's babysitter. The sister described the car as light brown with a black roof. The sitter notified the victim's mother, and the police were called.

Several hours later, defendant, carrying the victim, walked into Jim's Standard in Farmington, which is 25 miles south of Minneapolis in Dakota County. Defendant told the attendant that he had a flat tire which needed to be fixed or replaced. The victim stated, "He's not my daddy." Defendant became flustered and said, "What are you talking about, yes I am. Be good and I'll buy you a candy bar." The attendant called the police, who came and arrested defendant. Defendant was driving a 1971 Chevrolet with a brown body and black top.

The victim told a state trooper that defendant had taken her to a cornfield and made her lie down and threatened to kill her if she did not pull her pants down. She also said that defendant kissed her like a big girl. Later, in a statement to police, she said that defendant forced her to commit fellatio.

Defendant, who was 25 at the time, has a long history of severe alcohol dependency. Although he has no prior felony record, he has a fairly long record of alcohol-related misdemeanor offenses. In a statement to police, he said that he did not remember picking up the victim but did remember having her in his car and out in a corn field and admitting knowing that "that's a bad thing."

The state filed a complaint against defendant on September 28, charging him only with kidnapping, Minn.Stat. § 609.25, subds. 1(2), 2(2) (1980) (kidnapping with victim not released in safe place or with victim suffering great bodily harm). The state gives two reasons, the age of the victim and

the fact that the victim had no idea in which county the sexual abuse occurred, for not charging defendant with criminal sexual conduct.[1]

On October 29, defendant, represented by counsel, pleaded guilty to the kidnapping charge. He testified that, although he blacked out for periods of time on the day in question, he did remember being in the car with the victim and remembered being in a gas station. He testified that if he went to trial he would not be able to refute the evidence that he kidnapped the victim or the evidence concerning what happened in the cornfield. He admitted that he did not release the victim in a safe place before he was caught.

A presentence investigation was conducted by a probation officer. Defendant told the officer that he left work early on September 25 because he had a hangover. He stated that he bought lots of beer and started driving around the Twin Cities, drinking the beer as he drove, and that he later stopped in a St. Paul bar and drank beer for 3 more hours. He claimed that he then went into a blackout. He said that this was not the first time that had happened. He stated that his next recollection was being in the car late at night and realizing that the victim was in the car with him. He claimed that he went to the gas station to use the telephone to call the girl's family but that he was too intoxicated to use the telephone. He denied any recollection of kidnapping the victim or of taking her into a cornfield.

The offense is a severity level VII offense. The presumptive sentence for this offense by one with defendant's criminal history score, which is zero, is 24 (23–25) months in prison.

The trial court imposed a sentence of 72 months, which is three times the presumptive sentence. In his remarks on the record in support of the departure, the court cited (1) the victim's vulnerability due to age, (2) the mental cruelty involved, and (3) the random and bizzare nature of the offense. The trial court expanded on these points in a written memorandum.

This appeal followed.

A determination of the issue whether the trial court erred in imposing a 72-month prison term requires an analysis of (a) what facts may be considered in determining whether there were aggravating factors present, (b) what were the aggravating factors, and (c) whether the aggravating factors were serious enough to justify a sentence greater than double the presumptive sentence.

■ (a) The two key cases on what facts may be considered in determining whether there were aggravating factors present are *State v. Garcia,* 302 N.W.2d 643 (Minn.1981) and *State v. Womack,* 319 N.W.2d 17 (Minn. 1982).

In *Garcia,* the defendant was charged with kidnapping and criminal sexual conduct in the first degree for kidnapping a young woman leaving a St. Paul disco and forcing her to have sexual relations (both vaginal intercourse and fellatio) with him. Pursuant to a plea agreement, he was permitted to plead guilty to the kidnapping charge, and the sex charge and an unrelated drug charge were dismissed. One of the issues on appeal was the propriety of a

---

1. Sparing the victim the psychological turmoil associated with testifying was a legitimate reason for not charging defendant with any sex offense. The state justifiably may have concluded that it could prove kidnapping without calling the victim.

However, the fact that the victim had no idea in which county the sexual abuse occurred was not a valid reason for not charging defendant with criminal sexual conduct. Minn.Stat. § 627.15 (1980) provides, "A criminal action arising out of an incident of alleged child abuse may be prosecuted either in the county where

the alleged abuse occurred or the county where the child is found." To the extent that there is any inconsistency between the statute and the Rules of Criminal Procedure on this issue, the Rules take precedence. Minn.Stat. § 480.059, subd. 7 (Supp.1981). However, there is no inconsistency on this point. In fact, Minn.R. Crim.P. 24.02, subd. 3, specifically provides, in part, "If it is doubtful in which one of two or more counties the act was committed or injury or death occurred, the offense may be prosecuted and tried in any one of such counties."

limited durational departure from the presumptive sentence. We upheld the departure because, during the kidnapping, the defendant treated the victim "in a particularly cruel way, driving her around for 2 hours in a wild fashion and subjecting her to psychological terror and gross physical and sexual abuse." 302 N.W.2d at 647. We added that "Recognizing and relying on this does not in our opinion amount to improper reliance on offenses of which the defendant was not convicted [namely, the sex charge, which was dismissed]. We believe that the sentencing court in sentencing on a kidnapping conviction should be permitted to consider what happened during the kidnapping." *Id.*

In a number of other cases following *Garcia,* we have indicated that generally it is proper for the sentencing court to consider the conduct underlying the charge of which the defendant was convicted. *See, e.g., State v. Rott,* 313 N.W.2d 574 (Minn. 1981); *State v. McClay,* 310 N.W.2d 683 (Minn.1981).

However, in *Womack,* we were faced with a situation which called for an exception to the general rule that a sentencing court can consider circumstances underlying the charge of which the defendant was convicted. In that case the defendant was charged with possession of a pistol by a felon and assault in the second degree (assault with a dangerous weapon). The defendant pleaded guilty to the possession charge on the understanding that the assault charge would be dismissed. The sentencing court based a durational departure on the belief that the defendant had committed the assault. Holding this improper, we reduced defendant's sentence to the presumptive sentence length. Our opinion stated:

> Notwithstanding [*Garcia* and related cases], we believe that it was error in this case for the trial court to rely on the overall course of conduct as justification for aggravating defendant's sentence for the possession charge. Defendant admitted that he violated the law in possessing the gun but at all times he has claimed

that he used it against the complainant only in self-defense, first in striking her when she attacked him with the knife, later to fire in the air and frighten her in an attempt to stop her from attacking him as he attempted to drive away. Defendant had a right to have a jury determine his guilt or innocence of that charge. He gave up that right only on condition that the charge would be dismissed in exchange for his guilty plea to the possession charge. It is one thing for the sentencing court to look at the conduct underlying the offense to which the defendant pled guilty if the defendant admits that the underlying conduct occurred, but it is quite another thing when the defendant denies that such conduct occurred. In this case the defendant at all times has claimed that he acted in self-defense. Stated differently, although defendant obtained a dismissal of the assault charge in exchange for his guilty plea and although he has never admitted his guilt of the assault charge, he received a term of 30 months, which is the duration of the term which would have been presumptively appropriate if he had been convicted of the assault by a jury.

The state's response is that as a matter of law defendant did not act in self-defense. However, upon analysis it becomes apparent that the state is really arguing that *as a matter of fact* defendant did not act in self-defense. Given the way in which the case was presented to the trial court, the trial court was not entitled to act as factfinder and determine whether defendant was telling the truth when he claimed that the complainant attacked him with a knife. That being so, we believe that the departure, based on the sentencing court's factfinding, was improper. Accordingly, defendant's sentence is reduced to 16 months.

319 N.W.2d at 19–20.

We do not have the problem in this case that we had in *Womack.* Here defendant testified at the guilty plea hearing that he had no recollection of the kidnapping or of what happened in the cornfield. He added

that if the case went to trial he would not be able to refute the evidence that the kidnapping occurred or the evidence concerning what happened in the corn field. Under these circumstances, we believe that, as in *Garcia,* the trial court was justified in considering the victim's version of what happened during the kidnapping.

(b) There were a number of aggravating factors present in this case.

■ First, the victim was particularly vulnerable due to her age. This is one of the aggravating factors appearing in the nonexclusive list of factors established by the Sentencing Guidelines Commission. *See* Minnesota Sentencing Guidelines and Commentary, II.D.2.b(1) (1982).

Second, we believe that defendant committed the crime of kidnapping with particular cruelty, which is another listed aggravating factor. *Id.,* II.D.2.b(2). The cruelty here was "of a kind not usually associated with the commission of the offense in question." *State v. Schantzen,* 308 N.W.2d 484, 487 (Minn.1981). Defendant took the victim to a secluded cornfield where he threatened her with death if she did not cooperate, then forced her to commit fellatio. Although the victim suffered no physical injury, the trial court indicated that he had information that the victim has needed psychological or psychiatric counseling as a result of the experience and that she is now afraid to go to the street corner alone and catch the schoolbus. Meanwhile, when this was happening, the victim's family and other people were filled with great fear about the safety and welfare of the victim.[2] Further, the random nature of the kidnapping and the fact that it involved snatching a young child from her own yard increased the severity of the offense.[3] If children cannot be permitted the freedom that ideally they should have, it is partly because of the always present possibility of acts such as this.

(c) The remaining issue is whether these aggravating circumstances were sufficiently aggravating to justify a durational departure of three times the presumptive sentence. Recent cases bearing on this issue include *State v. Shiue,* 326 N.W.2d 648 (Minn.1982); *State v. Herberg,* 324 N.W.2d 346 (Minn.1982); *State v. Partlow,* 321 N.W.2d 886 (Minn.1982); *State v. Martinez,* 319 N.W.2d 699 (Minn.1982); *State v. Stumm,* 312 N.W.2d 248 (Minn.1981); and *State v. Evans,* 311 N.W.2d 481 (Minn.1981).

The decision which we must make is whether this is one of the extremely rare cases in which more than a double durational departure is justified. There is no easy-to-apply test to use in making this decision, and there is no clear line that marks the boundary between "aggravating circumstances" justifying a double departure and "severe aggravating circumstances" justifying a greater than double departure. In the final analysis, our decision whether there were "severe aggravating circumstances" must be based on our collective, collegial experience in reviewing a large number of criminal appeals from all the

2. Support for looking at the impact of a crime on people other than the victim in determining whether the crime was committed in a particularly cruel way may be found in *State v. Shiue,* 326 N.W.2d 648 (Minn.1982) (where we upheld a durational departure of 3.4 times the presumptive sentence because of the emotional trauma inflicted on the victim's family by the kidnapping and the delay in the discovery of the body caused by the concealment of the body and because of the use by the defendant of the fact of concealment of the victim's body to obtain plea agreement); *State v. Profit,* 323 N.W.2d 34, 36 (Minn.1982) (where we held that committing an assault on a nursery school teacher in front of the children was a "particularly outrageous act," and that while the children were not technically victims of the crime, "they were victims in another sense"); and *State v. McClay,* 310 N.W.2d 683, 685 (Minn. 1981) (where we held that the robbery was a more aggravated form of robbery because the defendants put a large number of people in fear, kidnapped one person, and assaulted several others during their escape).

3. We have held in a number of cases that the defendant's invasion of the zone of privacy surrounding and including the victim's home is a factor which may be considered in determining whether the defendant committed a sexual offense with particular cruelty. *See, e.g., State v. Van Gorden,* 326 N.W.2d 633 (Minn.1982); *State v. Morales,* 324 N.W.2d 374 (1982).

judicial districts. It is a decision which must be influenced by the knowledge that if durational departures of greater than two times the presumptive sentence are too easily allowed, the aims of the Sentencing Guidelines, of achieving uniformity of sentencing and of keeping the prison populations at a manageable level, could be undermined.

In this case we conclude that the trial court did not err in sentencing defendant to the 72-month prison term. In explaining our decision it is helpful to compare this case with our recent decision in *Partlow,* where we held that a greater than double durational departure was not justified. In *Partlow* the defendant, using a finger, sexually penetrated a 2½-year-old girl who knew him and caused her to experience some physical pain and a minor tear that had to be repaired surgically. The justification for allowing a greater than double departure in this case but not in *Partlow* lies in the fact that although the defendant in this case was convicted of a crime of a lesser severity level than the defendant in *Partlow,* the conduct of the defendant in this case was considerably more serious and aggravated than that of the defendant in *Partlow.*[4] Defendant snatched a young girl from the front yard of her own house. Parents cannot protect their children from people like defendant without turning their yards into the neighborhood equivalent of a police state. There is no evidence that Partlow terrorized his victim, whereas the defendant did that in this case. Partlow's crime surely caused emotional distress to the victim's family, but it was hardly the kind of distress caused by defendant to the victim's family in this case. The victim in this case was also more aware of what was happening to her than the victim in *Partlow.* Further, in this case there is evidence of psychological damage. Another differ-

ence is that the crime defendant committed in this case carried with it a great risk of death to the victim.

We affirm the trial court's greater than double, but nonetheless limited, durational departure.

Affirmed.

---

**4.** The kidnapping offense in this case is a severity level VII offense, whereas criminal sexual conduct in the first degree is a severity level VIII offense. The presumptive sentence for this offense by one with defendant's criminal history score is 24 (23–25) months in prison, whereas the presumptive sentence if defendant had been convicted of criminal sexual conduct in the first degree would have been 43 (41–45) months in prison. The sentence which defendant will serve is not as great a sentence as would have been imposed if defendant had been convicted of criminal sexual conduct in the first degree and if the presumptive sentence of 43 months for that offense had been doubled.