454 So.2d 714 (1984)
Onelia GARCIA and Matthew Lee Wilson, Appellants,
v.
STATE of Florida, Appellee.
Nos. AW-135, AW-313.
District Court of Appeal of Florida, First District.
August 14, 1984.
Rehearing Denied September 6, 1984.
P. Douglas Brinkmeyer, Asst. Public Defender and Carol Bickerstaff, Legal Intern, Tallahassee, for appellants.
Andrea Smith Hillyer, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Appellants appeal from their sentences imposed by the trial court below. Both were convicted upon tendered pleas of guilty to two separate charges: burglary of an occupied dwelling while armed with a *715 firearm, with the making of an assault; and robbery without the use of a firearm or other deadly weapon. Appellants contend here that the trial court erred in departing from the recommended sentencing guidelines, Florida Rule of Criminal Procedure 3.701, In re Rules of Criminal Procedure (Sentencing Guidelines), 439 So.2d 848 (Fla. 1983), in sentencing the appellants to concurrent ten year prison terms, as well as in failing to justify the reasons for its departure from the sentencing guidelines with specificity sufficient to inform all parties of the factual basis for its departure. Finding both points to be without merit, we affirm.
Appellants were charged by a four-count information filed June 10, 1983, with burglary of a dwelling with a firearm, robbery with a firearm, and separate counts of attempted first degree murder. Appellants, along with a codefendant not involved in the instant appeal, robbed the victim at gunpoint in the victim's residence around 2:00 A.M. on May 24, 1983. All three made their escape in the victim's automobile. Subsequently, at approximately 3:20 A.M. on the same evening, appellants were sighted driving the victim's automobile by an observant Gainesville police officer responding to a BOLO. As a result, a chase ensued during which both appellants fired shots at the pursuing officer. One of these shots entered the open driver's door window of the officer's police car and blew out the window on the other side of the car.[1] Later, the pursuing officer ran into a tree during the course of the pursuit. Appellants made their escape in a wooded area near the location of the officer's accident, but were captured a few hours later in the apartment of a friend.
Appellants entered a negotiated plea in which appellants plead guilty to burglary of an occupied dwelling with a firearm and robbery without the use of a firearm or other deadly weapon. In exchange, the State agreed to nolle pros the pending attempted murder charges. Score sheets prepared for the purposes of determining a proper recommended sentence pursuant to the sentencing guidelines indicated a recommended sentence range for Garcia of between three and one-half to four and one-half years; for appellant Wilson, the recommended sentence range was three years.
At sentencing, the court chose to deviate from the sentencing guidelines, and sentenced each appellant to concurrent prison terms of ten years, with credit for time served. The trial judge indicated that the guidelines' recommended sentence was inappropriate in each of appellants' cases because of the threat to the personal safety of both citizens and law enforcement officers created by appellants' unjustifiable conduct. The trial judge further stated his reasons for departing the sentencing guidelines in the written order of sentence: "Extreme risk to the physical safety of both citizens and law enforcement officers caused by the [appellants] during the perpetration and apprehension for this offense." This appeal followed.
Appellants contend the trial court erred in considering the facts surrounding their apprehension as the basis for departure from the guidelines. They note that although they were originally charged with two counts of attempted first degree murder based on the fact that shots were fired at the pursuing police officer, the charges were later dropped as a result of plea negotiations. Therefore, they assert, no convictions were obtained for this offense, and Florida Rule of Criminal Procedure 3.701(d)(11) prohibits the use of the underlying facts relating to the attempted murder charges which were dismissed. Rule 3.701(d)(11) provided, in part, at the time of appellants' sentencing (November 1983):[2]
Reasons for deviating from the guidelines shall not include factors relating to *716 either instant offense or prior arrests for which convictions have not been obtained.
Appellants contend that the "extreme risk" factor relied upon by the trial court was a factor relating either to the instant offenses for which appellants plead guilty below, or to their conduct culminating in the attempted murder charges which were nolle prossed. Appellants assert that since their conduct in firing shots at the pursuing police officer did not subsequently result in convictions, the trial court was prohibited by the rule from considering such behavior as a reason for departing from the guidelines. Appellants further argue that the "extreme risk" factor relating to the offenses for which they were convicted is equally inapplicable as a reason for departure. They urge that that risk factor noted by the trial court has already been taken into account by the sentencing commission in the formulation of the sentencing guidelines. Thus, since the offenses below were committed in a manner that the appellants characterize as "very ordinary," the trial court's allusion to the extreme risk of harm to the victim of the burglary and robbery cannot constitute "clear and convincing reasons" for departing from the guidelines' recommended sentence.
Finally, appellants suggest that the trial court below violated the spirit if not the letter of Rule 3.701(d)(11), which requires "any sentence outside of the guidelines [to be] accompanied by a written statement delineating the reasons for the departure." Appellants maintain that the trial court below failed to adequately delineate its reasons for departing the sentencing guidelines. Rather, appellants assert that the trial court's "terse [and] conclusory assertion" fails to "with sufficient specificity [inform] all parties, as well as the public, of the reasons for departure." Florida Rule of Criminal Procedure 3.701(d)(11), committee note. Appellants suggest that their right to appellate review has been curtailed by the trial court's alleged lack of written specificity as to the reasons for its departure from the guidelines. We find these points raised by appellants to be without merit.
This case presents the issue specifically reserved by this court in its recent decision in Darryl Manning and James W. Phillips v. State of Florida, 452 So.2d 136 (Fla. 1st DCA 1984), that is, whether Rule 3.701(d)(11) precludes the trial court's consideration of charges which have been dismissed pursuant to a plea bargaining agreement as a factor justifying departure from the sentencing guidelines. As previously noted, Rule 3.701(d)(11) contains a two-pronged prohibition: Factors relating to either the "instant offense," or "prior arrests" for which convictions have not been obtained. Under appellants' literal interpretation of this rule, the trial court's departure from the guidelines was improper under either prong of the prohibition just noted. One of the factors relating to appellants' apprehension and arrest undoubtedly was their firing of shots at the pursuing officer; but no convictions for the resulting attempted murder charges were secured. Although the appellants' actions in firing shots at the pursuing officer cannot literally be considered an element of the offenses appellants pled to, Section 810.02(3) and Section 812.13(c), nevertheless these actions taken shortly after the burglary and robbery, presumably while making their escape from the scene, may arguably be viewed as "relating to" these offenses. Under the broad view of the term "factors relating to the instant offenses" urged by appellants, nothing that occurred during the entire criminal episode, including events immediately following the actual commission of the offense, could be considered by the trial judge as justifying a departure from the guidelines unless conviction for a specific offense resulted. Further, as previously noted, appellants view the "extreme risk" factor relating to the offenses at the victim's dwelling as already taken into account by the guidelines' presumptive sentence range.
We reject the interpretation urged by appellants. In our view, the traditional discretion of a sentencing court to consider *717 all facts and circumstances surrounding the criminal conduct of the accused has not been abrogated by adoption of the sentencing guidelines. Our interpretation is supported by language found within the guidelines themselves, as well as their underlying rationale. For example, the guidelines' statement of purpose found at Rule 3.701(b)(6) provides: "The sentencing guidelines are designed to aid the [sentencing] judge in the sentencing decision and are not intended to usurp judicial discretion...." The function and purpose of the guidelines is further illuminated in the authoritative contemporary analysis by Sundburg, Plante, and Braziel, Florida's Initial Experience with Sentencing Guidelines, 11 Fla.St.U.L.Rev. 125, 150 (1983). The authors of this work report that during the multi-jurisdictional sentencing guidelines project instituted in 1981 and ending April 14, 1982:
... The trial judges were cautioned that at no time should sentencing guidelines be viewed as the final word in the sentencing process ... because a factor was not expressly delineated on the score sheet did not mean that it could not be used in the sentence decision making process. The specific circumstances of the offense could be used to either aggravate or mitigate the sentence within the guideline range or, if the offense or offender characteristics were sufficiently compelling, used as a basis for imposing a sentence outside of the guidelines. The only requirement was that the judge indicate the additional factors considered. (emphasis supplied)
Id. at 142. There is no evidence that the Sentencing Guidelines Commission did not postulate use of the guidelines by sentencing judges consistent with the intent expressed in the above emphasized language once the guidelines became operative state-wide. Indeed, the intended function of the guidelines is reflected in Florida Rules of Criminal Procedure 3.701(b)(3): "The penalty imposed should be commensurate with the severity of the convicted offense and the circumstances surrounding the offense." (emphasis supplied)
Decisions from our sister courts show that we are in accord in our views that the trial courts continue to have the same broad sentencing discretion conferred upon them under the general law, subject only to certain limitations or conditions imposed by the guidelines, which are to be narrowly construed so as to encroach as little as possible on the sentencing judge's discretion, but whose specific directives we are required to recognize and enforce in a manner consistent with the guidelines' stated goals and purposes. Thus, in Weems v. State, 451 So.2d 1027 (Fla. 2d DCA 1984), opinion filed June 29, 1984 [9 FLW 1385], in rejecting the contention that the trial court erred in relying upon the defendant's record of prior juvenile dispositions more than three years old as grounds for a sentence beyond the guidelines range, the district court (opinion by Grimes, J.) stated: "There is nothing in Rule 3.701 to suggest that matters excluded for purposes of guideline computation cannot be considered as reasons for departure from the guidelines." Id. at 1029. We note also the decision of the same court in Addison v. State, 452 So.2d 955 (Fla. 2d DCA 1984), regarding the proper standards for reviewing a trial court's decision to sentence the defendant outside of the guidelines' recommended sentence range. There the court found that the rule's use of the term "clear and convincing reasons" for departing from the guideline's recommended sentence did not mandate that a reviewing court "reevaluate" the trial court's exercise of sentencing discretion.
Rather, our role is to assure that there is no abuse of that discretion. Here the trial judge stated his basis for departing from the guidelines in writing and imposed a sentence within the statutory parameters. Given this factual situation, no abuse of discretion is shown.
Id. at 956.[3]
The Fifth District, in Carter v. State, 452 So.2d 953 (Fla. 5th DCA 1984), although *718 finding that a defendant on probation was not under "legal restraint" under Rule 3.988(d)IV, so as to justify adding points to his score sheet, held a violation of probation may serve as a legitimate reason to exceed the presumptive sentence established by the guidelines. See also, Neely v. State, 453 So.2d 129 (Fla. 5th DCA 1984). Accord, Bogan v. State, 454 So.2d 686 (Fla. 1st DCA 1984).[4]
Finally, in our initial decision construing the "clear and convincing reasons" language of Rule 3.701(d)(11), Manning v. State, supra, we held that the rule did not preclude departure from the guidelines where the defendants were convicted of multiple contemporaneous offenses and were characterized by the trial judge, in stating his reasons for departure, as being on a "crime binge" and a "two-man crime wave." Thus, the Manning court clearly approved deviation from the guidelines based upon circumstances surrounding the offenses (occurring over a two-day period) as "factors attending the offenses for which appellants were convicted" (Id. at 137, fn. 1), even though certain of the charges constituting the "crime binge" were dismissed by the state. Similarly, we think the trial judge here was justified in departing from the guidelines because of "factors attending the offenses" for which convictions were obtained.[5]
In the final analysis, we reject the notion, implicit in this and the mounting deluge of guidelines appeals, that there reposes in the language of the guidelines, either in the "clear and convincing reasons" terminology or elsewhere, a set of sentencing departure absolutes only awaiting the proper occasion for the appellate courts to reveal them on a case-by-case basis. Rather, the guidelines are for the guidance of the trial court, as on the face thereof they are represented to be, and the appellate courts' function is simply to enforce their proper application and to review departures by the trial courts to determine if there has been an abuse of discretion warranting reversal. See, Addison v. State, supra.
We find support for our holding that departure was justified here in State v. Norton, 328 N.W.2d 142 (Minn. 1982). There, the defendant kidnapped his five year old victim from her front yard and transported her to a secluded location where he committed a sexual battery upon her. As a result of the defendant's actions, the victim required psychological and psychiatric counseling. The trial court imposed *719 a sentence more than twice the presumptive sentence established by the Minnesota sentencing guidelines for the crime for which he was charged. This was upheld by the Minnesota Supreme Court.
Minnesota, like Florida, utilizes a set of sentencing guidelines in the sentencing process. The Minnesota guidelines are "presumed to be appropriate for every case," Minnesota's Sentencing Guidelines and Commentary, Section II.D (1982 Supp.), unless the trial court finds "substantial and compelling" circumstances to aggravate or mitigate the guidelines' presumptive sentence, based on a nonexclusive list of aggravating or mitigating factors. Id., Commentary, at Section II.D. The Minnesota guidelines' avowed purpose is to "[impose] substantial limits upon judicial [sentencing] discretion," 5 Hamline L.Rev. 165, 207 (1982). In upholding the trial court's nonguidelines sentence in Norton, despite the Minnesota guidelines' broadly stated purpose of severely restricting a sentencing judge's discretion, the Minnesota Supreme Court relied on previous cases construing the Minnesota guidelines, stating that it was generally proper for a sentencing court to consider the conduct underlying a charge for which a criminal defendant stood convicted. Moreover, said the court, this general rule would hold true even where certain of the facts relied upon by the sentencing court to impose a nonguidelines sentence were derived from conduct resulting in other offenses being charged but later dismissed. The court stated: "We believe that the sentencing court in sentencing on a [criminal] conviction should be permitted to consider what happened during the [crime]," citing State v. Garcia, 302 N.W.2d 643 (Minn. 1981).[6] Thus, we think the trial court in the case before us was correct in basing his durational departure from the sentencing guidelines on the stated reason.
Appellants' second ground on appeal is frivolous. Rule 3.701(d)(11) requires a "written statement" of the trial court's reasons for not sentencing within the guideline range that has "sufficient specificity" to inform the parties and the public of the trial court's reasons for said departure. Committee Note to paragraph (d)(11). Examining the trial court's written statement, as well as the record as a whole, see Manning v. State, supra, at 138 (Ervin, C.J., specially concurring), we find the rule to have been complied with here. Accordingly, the judgments and sentences appealed from are affirmed.
AFFIRMED.
WENTWORTH and WIGGINTON, JJ., concur.
NOTES
[1] The second shot was apparently fired by appellant Garcia immediately after both appellants alighted from their automobile near the scene of the pursuing officer's accident.
[2] See amendments to rule, The Florida Bar: Amendments to Rule of Criminal Procedure (3.701, 3.988  Sentencing Guidelines), 451 So.2d 824 (Fla. 1984).
[3] The Fourth District, in Harvey v. State, 450 So.2d 926 (Fla. 4th DCA 1984), stated: "We hold that past criminal conduct which cannot be considered in computing the score sheet cannot be relied upon as justification for departure from the guidelines." This statement considered in isolation would appear to run counter to the view expressed by the Second District in Weems v. State, supra. On the facts, however, the cases are distinguishable because the "criminal conduct" dealt with in Harvey consisted only of prior juvenile arrests, and convictions for minor vehicular and traffic violations.
[4] By way of comparison, this court has on several occasions enforced the legislative mandate requiring trial courts to recognize the applicability of the guidelines to defendants before them for sentencing: Duggar v. State, 446 So.2d 222 (Fla. 1st DCA 1984) (defendant on probation, revoked after effective date, entitled to be sentenced under the guidelines), and Jackson v. State, 454 So.2d 691 (Fla. 1st DCA 1984); Harms v. State, 454 So.2d 689 (Fla. 1st DCA 1982) (willful failure to appear for sentencing until after effective date of guidelines not grounds for denial of applicability of guidelines to defendant), and Knight v. State, 455 So.2d 457 (Fla. 1st DCA 1984); Roux v. State, 455 So.2d 495 (Fla. 1st DCA 1984) (sentence outside guidelines reversed where trial court failed to state reasons for departure).
[5] As for appellants' contention that the facts adduced below are indicative of an "ordinary" robbery for which they should receive the "ordinary" sentence posited by the sentencing guidelines' range, we disagree. On the contrary, the reckless firing of a gun during a wild automobile chase while trying to avoid their arrest is precisely the sort of aggravating circumstance that constitutes a "clear and convincing reason" for departing the presumptive guidelines sentence. We also find nothing "ordinary" about a 2:00 A.M. burglary of a dwelling and the robbery and tying up of its occupant at gunpoint. In short, we find that the trial court was simply taking into account the "severity of the offense and the circumstances surrounding the offense," as contemplated by Rule 3.701(b)(3), in deciding to sentence outside the guidelines.
[6] The court in Norton recognized an exception to this general rule allowing consideration of the circumstances underlying the charge for which a criminal defendant is convicted. This exception applies where the defendant denies the factual basis for the aggravating factor relied on by a sentencing court. The court cited by way of example its decision in State v. Womack, 319 N.W.2d 17 (Minn. 1982), where a sentencing court based its departure from the Minnesota sentencing guidelines applicable to that defendant on a dismissed assault charge for which the defendant maintained throughout an assertion of self-defense. Here, unlike Womack, neither appellant denies the underlying factual basis for the nolle prossed attempted murder charges, to wit: firing shots from a hand gun during the automobile chase while attempting to elude pursuing officers. It is self-evident that firing shots during such an episode was correctly cited by the court as creating a "risk" to citizens and law enforcement officers, even in the absence of any specific intent to kill.