500 So.2d 1367 (1987)
James Wayne ORTAGUS, Appellant,
v.
STATE of Florida, Appellee.
No. BL-204.
District Court of Appeal of Florida, First District.
January 6, 1987.
*1368 Henry M. Coxe, III of Coxe & Schemer, Jacksonville, for appellant.
Jim Smith, Atty. Gen. and Maria Ines Suber, Asst. Atty. Gen., for appellee.
MILLS, Judge.
In this appeal from a conviction for manslaughter with a firearm, Ortagus presents the following issues for our consideration: (1) whether the trial court erred in failing to instruct the jury on the law of justifiable and excusable homicide contemporaneously with the instruction on manslaughter; (2) whether the trial court properly instructed the jury on excusable homicide; (3) whether the trial court reversibly erred when it instructed the jury on the maximum and minimum penalties applicable to the charged crime; (4) whether the trial court erred in limiting the cross-examination of a state witness and by denying the introduction of testimony by an expert witness; (5) whether the trial court erred in exceeding the sentence recommended by the sentencing guidelines; and (6) whether the trial court erred in reclassifying the crime of manslaughter from a second degree felony to a first degree felony pursuant to Section 775.087(1), Florida Statutes (1983). Based on Ortagus' first and fifth contentions, we reverse.
On the afternoon of 1 September 1985, Ferman Fowler, his wife Virginia Fowler, his brother-in-law Leo Perry, an employee of Fowler's named Russell Rivers, his wife Michelle Rivers, and the children of Rivers met at Fowler's home and spent the afternoon together from 12:30 p.m. until 5:30 p.m. During the afternoon Fowler drank "scotch on the rocks" and Perry drank "bourbon." At approximately 5:00 a collective decision was made to go eat pizza, and arrangements were made for Perry to go home and pick up his wife and children. En route to Vito's Pizza Restaurant, Fowler drove one car which contained his family and that of the Rivers, while Perry followed in a separate vehicle with his family.
Meanwhile the defendant, James Ortagus, had also decided to go to Vito's Pizza to pick up a sandwich for dinner. He had been drinking that afternoon as well; however, according to the testimony given by two waitresses, he did not appear intoxicated or upset or angry about anything.
As Ortagus was leaving the parking lot of Vito's Pizza, Fowler drove up. According to Mrs. Fowler, Ortagus did not appear to be paying close attention to their car as he was backing out. After parking his car in an empty space, Fowler immediately approached the driver's side of Ortagus' truck, asking the defendant if "he had a problem." Rivers also got out of the car, the rest of the family members staying inside, and went to the side of Ortagus' truck where Fowler stood with his left arm on the vehicle. At this point, Rivers saw Ortagus lift a gun up in his hand and state "don't make me do this." He then watched the defendant shoot Fowler one time in the chest.
Mrs. Fowler testified that she remained in the car while her husband talked with the driver of the truck, and during this brief time, she repeatedly looked back at the truck and observed nothing wrong until hearing a shot and watching her husband fall backwards.
Perry testified that when he entered Vito's parking lot, he drove past the defendant's truck looking for a place to park. Upon finding none available, he watched Fowler and Ortagus in his rearview mirror. He then heard a shot, saw Fowler fall backwards, and viewed the defendant drive away.
In his defense, Ortagus took the stand and stated that as he was leaving Vito's a total stranger rushed up to his truck, calling out "do you have a problem" and threatening to "beat his ass." He further *1369 testified that the stranger was extremely big and appeared to be on drugs or drinking a lot. Frightened, Ortagus pulled out a .357 pistol and shot Fowler when he allegedly reached inside the truck to grab the defendant. Ortagus concluded his testimony by stating after the shooting he panicked and went to a friend's house but eventually surrendered himself to the police.
At trial, substantial testimony focused on the extent of Fowler's intoxication along with his physical dimensions. Dr. Bonifacio Floro, Deputy Chief Medical Examiner for the Fourth Judicial Circuit, testified that Fowler had a blood alcohol content of .18 per cent, and in bare feet, stood six feet four inches tall and weighed 243 pounds. It was also established that Ortagus is five feet eleven inches in height, weighing 180 pounds.
Prior to trial, the State filed a notice to waive request for the death penalty. Accordingly, the trial court ruled the "law of this case is that death is not a possible penalty," and advised the jury of such during voir dire, notwithstanding Orgatus' objection to the jury being informed of the possible penalties in the case.
Also during voir dire, a prospective juror, William Wilds, testified that Mrs. Fowler had conveyed to him earlier that "she didn't know anything" about the crime. The prosecution objected to permitting defense counsel to impeach Mrs. Fowler with this statement, and the trial court sustained the objection, ruling, "I don't know that that is an inconsistent statement, but I'm not allowing it anyway."
At trial, Ortagus' theory of defense was that the conduct of the deceased provoked and instigated the confrontation, and that the killing of the deceased was done as an act of self-defense. In this regard, Ortagus proffered the testimony of David Warniment, a firearms expert, concerning the distance the defendant's gun was from Fowler at the time it was fired. The trial court prohibited Warniment from expressing his opinion, relying on the fact that Warniment could not give an expert opinion that the hole in the victim's shirt, upon which the expert based his calculations, was in fact caused by a bullet.
Upon conclusion of all the evidence, the trial court instructed the jury, over objection by the defense, on the crime of manslaughter. The jury was also given a short instruction on excusable homicide, to which no objection was made.
The jury found Ortagus guilty of manslaughter with a firearm, a lesser included crime of the offense charged, first degree murder. Pursuant to Section 775.087(1), Florida Statutes, the trial court then reclassified the manslaughter conviction to a first degree felony, and sentenced Ortagus to a 20-year term of imprisonment. This sentence represented a departure from the term of 7 to 12 years recommended by the sentencing guidelines and, consequently, the trial court entered a separate written order in justification thereof reciting the following:
The killing of Ellis Fowler was an absolutely senseless killing that endangered the lives of others, particularly the life of Russell Rivers. It occurred in a crowded parking lot. Considering the size of the weapon used, he could easily have killed other people.
The killing was committed in the presence of Mr. Fowler's wife, his brother-in-law, sister-in-law, Mr. and Mrs. Russell Rivers (Mr. Rivers was standing right next to the deceased); but more importantly, children of the ages of 2, 3, 10 and 14 years were also present. The older children saw the shooting of another member of their family. I am sure the entire family will suffer emotional and psychological trauma for a long time but particularly these children.
Upon instructing the jury, the trial court gave an introduction which included a brief and general definition of excusable and justifiable homicide. The court then went on to define the crimes of first and second degree murder. As to the crime of manslaughter, the trial court gave the following instruction:
*1370 Before you can find the defendant guilty of manslaughter, the State must prove the following two elements beyond a reasonable doubt:
1. F. Ellis Fowler is dead.
2. The death was caused by the act or culpable negligence of James W. Ortagus.
I will now define "culpable negligence" for you. Each of us has a duty to act reasonably toward others. If there is a violation of that duty, without any conscious intention to harm, that violation is negligence. But culpable negligence is more than a failure to use ordinary care for others. For negligence to be called culpable negligence, it must be gross and flagrant. The negligence must be committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury.
Florida courts have consistently held, starting with Hedges v. State, 172 So.2d 824 (Fla. 1965), that when a trial court gives an instruction on manslaughter it is reversible error for the court to fail to give an instruction on justifiable and excusable homicide. See, Alejo v. State, 483 So.2d 117 (Fla. 2d DCA 1986); Smiddy v. State, 468 So.2d 466 (Fla. 4th DCA 1985); Brown v. State, 467 So.2d 323 (Fla. 4th DCA 1985); Delaford v. State, 449 So.2d 983 (Fla. 2d DCA 1984); Pridgeon v. State, 425 So.2d 8 (Fla. 1st DCA 1982); Kelsey v. State, 410 So.2d 988 (Fla. 1st DCA 1982); Gross v. State, 397 So.2d 313 (Fla. 4th DCA 1981); Lawson v. State, 383 So.2d 1114 (Fla. 3d DCA 1980). Therefore, we are called on to determine whether the trial court's summary definitions on excusable and justifiable homicide given at the beginning of the jury instructions, and not in connection with the instruction on manslaughter, satisfied this fundamental obligation. We find it did not.
As the above-cited cases emphasize, manslaughter, unlike first and second degree murder, is a residual offense which is actually defined by reference to what it is not. Kelsey v. State, supra. The trial court's instruction on manslaughter herein failed to cover material elements of the offense, making the instruction necessarily misleading and prejudicial to the accused. Croft v. State, 158 So. 454, 456 (Fla. 1935); Hedges v. State, supra. Moreover, in Alejo v. State, supra, the Second District held that the definitions of justifiable and excusable homicide must be given "as part" of the instruction on manslaughter. It should also be noted that many of the cases we have cited dealt with the issue of proper reinstruction on the offense of manslaughter. In those cases, even though the jury was initially instructed on manslaughter and justifiable and excusable homicide contemporaneously, the respective courts found reversible error when upon reinstruction on the crime of manslaughter the trial court omitted the previous references to justifiable and excusable homicide. Sub judice, the jury never even received the benefit of one correct and full instruction on manslaughter. Hence, reversible error must be found under this point.
Under the second issue raised, Ortagus contends the instant record supports a defense on the theory of excusable homicide, and the trial court's failure to give anything more than a summary definition of excusable homicide was fundamental error. In so arguing, Ortagus relies on the maxim that a defendant is entitled to a jury instruction on the theory of his defense, Palmes v. State, 397 So.2d 648 (Fla. 1981), notwithstanding the fact that self-defense and not excusable homicide was asserted as the defense below.
In view of our disposition on the first issue raised, we do not feel it is necessary to make a determination at this time as to whether the facts adduced at trial support the defense theory of excusable homicide. Upon remand, Ortagus will of necessity be granted a new trial, allowing him another attempt to try and elicit facts supporting a theory of excusable homicide if he wishes to do so.
*1371 Turning to the next issue, Fla.R. Crim.P. 3.390(a) provides that a trial judge shall not instruct the jury on the sentence which may be imposed in a cause, unless it is a capital case. Ortagus contends he was not charged with a capital crime because, per the parties' stipulation, the death sentence was not a possible punishment for his crime. Rusaw v. State, 451 So.2d 469 (Fla. 1984) (a capital crime is one in which the death sentence is possible). This argument, however, ignores the fact that the legislature has the power to define crimes and set punishments. Id. According to Section 782.04, Florida Statutes (1983), murder in the first degree is a capital offense. Accordingly, we find no error here.
Under Ortagus' fourth contention, he argues the trial court erred in forbidding him to cross-examine the victim's wife, Mrs. Fowler, as to the statement she allegedly made to prospective juror Wilds that "she didn't know anything," since Section 90.608(1), Florida Statutes (1983), allows a party to attack a witness' credibility with prior inconsistent statements. However, from our reading of the transcript this alleged statement was not inconsistent with her in-court testimony. Mrs. Fowler's testimony for the most part concerned what occurred on the day of the crime prior to the shooting. Her testimony regarding the shooting itself was very limited as she saw little that occurred.
Ortagus also asserts error in the trial court's refusal to allow his firearm expert to testify concerning the distance between his gun and the victim at the time of the shooting. We find the trial court did not abuse its discretion in denying the admissibility of the expert's proffered testimony. We base this decision on the ground that the expert's testimony would not have aided the jury. See, Mills v. Redwing Carriers, Inc., 127 So.2d 453, 456 (Fla. 2d DCA 1961); Huff v. State, 495 So.2d 145 (Fla. 1986). The expert was only going to testify to the close proximity of Ortagus to the victim at the time of the shooting, a fact that was certainly established by other testimony at trial. Moreover, the subject of the expert's opinion was not beyond the common understanding of the average layman. Id.
Looking to the fifth issue on appeal, we find the reasons listed by the trial court as justification for exceeding the sentencing guidelines are not clear and convincing. The trial court's first reason for departure, in summary, is that Ortagus endangered the lives of others. A flagrant disregard for the safety of others does constitute a clear and convincing reason for departure. Garcia v. State, 454 So.2d 714 (Fla. 1st DCA 1984). However, the fact that Ortagus endangered the lives of others was not proven beyond a reasonable doubt. State v. Mischler, 488 So.2d 523 (Fla. 1986) (in order to constitute a valid basis for departure, the justification must be supported by facts proven beyond every reasonable doubt). Only one shot was fired and it was aimed directly at the victim, unlike the defendant in Garcia, who fired shots wildly at police from his vehicle while being chased.
The court's second justification that the victim's entire family will suffer emotional and psychological trauma because of the crime being committed in their presence is likewise not supported by facts proven beyond a reasonable doubt. Initially, we would point out the evidence in the record is insufficient to establish that any family member witnessed the actual shooting, with the exception of Mr. Rivers. But more importantly, there is virtually no testimony going to the question of emotional trauma. As in Hankey v. State, 485 So.2d 827 (Fla. 1986), the only evidence of emotional trauma is the blanket assertion by the trial court to that effect. This is, of course, insufficient under the State v. Mischler standard.
As to the final issue of whether the trial court erred in reclassifying the crime of manslaughter to a first degree felony based on Ortagus' use of a firearm, we find no error. See, Strickland v. State, 437 So.2d 150 (Fla. 1983); Buckbee v. State, 463 So.2d 1240 (Fla. 4th DCA 1985) (trial court did not commit reversible error when, upon *1372 conviction of manslaughter with a firearm in prosecution for second degree murder with a firearm, it reclassified the crime to a first degree felony because of use of a firearm).
Reversed and remanded for a new trial.
SHIVERS and JOANOS, JJ., concur.