**STATE of Minnesota, Respondent,**

v.

**David Wayne HEARN, Appellant.**

No. C3-01-1318.

Court of Appeals of Minnesota.

July 2, 2002.

Mike Hatch, Attorney General, St. Paul, MN, and Amy Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant Hennepin County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Roy G. Spurbeck, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, WILLIS, Judge, and SHUMAKER, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant challenges the sufficiency of the evidence used to sustain convictions of criminal-sexual-conduct crimes and kidnapping. He also contends that the district court abused its discretion in imposing a life sentence, concurrent sentences for two crimes that were part of a single behavioral incident, and a consecutive sentence unsupported by aggravating circumstances. He further argues that the imposition of statutory maximum sentences exaggerated the criminality of his crimes and, thus, was improper. We affirm in part, reverse in part, and remand.

## FACTS

B.A.M. met appellant David Wayne Hearn in a bar at closing time on May 12, 2000. She accepted Hearn's offer to give her a ride home. During the ride, Hearn asked if it would be all right if they stopped at the office building where he was employed as a maintenance worker. B.A.M. agreed.

When they arrived at the building, Hearn said he needed to go inside and that B.A.M. could also come in and use the restroom. B.A.M. agreed. While B.A.M. was inside a restroom stall, Hearn entered the stall, forcefully unfastened B.A.M.'s pants, lifted her shirt and bra, and put his hands and mouth on her breasts. B.A.M. resisted and struggled with Hearn. He then choked her, held her down, and demanded that she give him her purse. When B.A.M. attempted to escape by crawling under the partition, Hearn grabbed her feet and pulled her back.

B.A.M. then said she had heard a noise. When Hearn turned his back, B.A.M. hit him with her wooden clog and got away. She hid in an office. When she thought she heard Hearn leave the building and

drive away, she also left. Outside the building, Hearn drove his car up to her and demanded that she get in. She refused, and Hearn grabbed her and forced her into the car. They struggled, and B.A.M. was able to get out of the car. Hearn followed, struck B.A.M. in the face, choked her, and pushed her to the ground. Hearn then grabbed her purse and returned to the car. B.A.M. returned as well because she wanted to retrieve her property. Hearn emptied the purse onto the pavement, and when another car came into the area, he drove away.

Hearn admitted driving B.A.M. to the office building, but contended that he did so because he and B.A.M. were going to smoke crack cocaine together. He also admitted searching through B.A.M.'s purse, but claims he did so only because he thought B.A.M. had stolen something from the building. He denied assaulting B.A.M. The grand jury returned indictments against Hearn on two criminal-sexual-conduct offenses and on kidnapping.

On December 1, 2000, a jury found Hearn guilty of attempted criminal sexual conduct in the first degree, in violation of Minn.Stat. §§ 609.342, subds. 1(e)(i), 2; .101, subd. 2; .109, subds. 3, 7; .17 (1998); criminal sexual conduct in the second degree, in violation of Minn.Stat. §§ 609.343, subds. 1(e)(i), 2, .101, subd. 2, .109, subd. 7 (1998); and kidnapping, in violation of Minn.Stat. § 609.25, subds. 1(2), 2(2) (1998).

The district court sentenced Hearn to life imprisonment for attempted first-degree criminal sexual conduct; to the statutory maximum of 25 years for second-degree criminal sexual conduct, concurrently with the life sentence; and to the statutory maximum of 40 years for kidnapping, consecutively to the sentences for the sex crimes. The sentence for second-degree criminal sexual conduct was a fivefold upward durational departure and for kidnapping a tenfold upward durational departure. On appeal, Hearn challenges the propriety of all the sentences as well as the sufficiency of the evidence.

## ISSUES

1. Were appellant's convictions sufficiently supported by the evidence?

2. Did the district court misinterpret Minn.Stat. § 609.109 (1998) and therefore mistakenly sentence appellant to a mandatory life sentence?

3. Did the district court mistakenly apply Minn.Stat. § 609.035, subd. 6 (2000), by imposing concurrent sentences for both of appellant's criminal sexual conduct convictions?

4. Did the district court abuse its discretion by imposing the statutory maximum sentences for appellant's second-degree criminal sexual conduct and kidnapping convictions?

5. Did the district court abuse its discretion by relying on the same grounds used to impose statutory maximum sentences for criminal sexual conduct and kidnapping to impose consecutive sentences?

## ANALYSIS

### 1. Sufficiency of the Evidence

Hearn contends that because B.A.M.'s testimony contained inconsistencies and was uncorroborated, it was too incredible to support his convictions. When considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume that the jury be-

lieved the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

The credibility of individual witnesses and the weight to be given each witness's testimony are issues for the jury to decide. *State v. Bliss,* 457 N.W.2d 385, 390 (Minn.1990). "Inconsistencies in testimony and conflicts in evidence do not automatically render the testimony and evidence false and are not bases for reversal." *State v. Bakken,* 604 N.W.2d 106, 111 (Minn.App.2000) (citation omitted), *review denied* (Minn. Feb. 24, 2000). The inconsistencies in B.A.M.'s testimony involved tangential details about what occurred. On both direct and cross-examinations her testimony as to the sexual assault and kidnapping was consistent. We conclude that there was sufficient credible evidence to support the verdicts, and the jury reasonably could have found that the inconsistencies did not impair B.A.M.'s credibility as to the essential elements of the crimes.

Although B.A.M.'s testimony as to the criminal sexual conduct and kidnapping is not corroborated by direct evidence, it need not be. *See* Minn.Stat. § 609.347, subd. 1 (1998) (stating that "the testimony of a victim need not be corroborated"); *Dale v. State,* 535 N.W.2d 619, 624 (Minn. 1995) (same); *State v. Burns,* 524 N.W.2d 516, 521 (Minn.App.1994) (same), *review denied* (Minn. Jan. 13, 1995). But there was corroborating evidence in the record to support B.A.M.'s testimony regarding the surrounding circumstances. Hearn admitted virtually all the circumstances except the crimes. He even admitted that he followed B.A.M. into the office restroom. B.A.M.'s blood was found inside Hearn's car. Police found a baseball cap that likely belonged to Hearn, and items belonging to B.A.M., along the road outside the office building. The security log from the office building confirms that

Hearn's key card was used to enter the building around 1:30 a.m. A taxi driver testified that he picked up B.A.M. and drove her home on the morning of the attack. Police photographed B.A.M.'s injuries. B.A.M.'s landlord testified that B.A.M. described the events to him one day following the attack, and his testimony was consistent with B.A.M.'s. Finally, Hearn's wife testified that she detected no signs of drug use when Hearn returned home the morning following the attack. Because the evidence is sufficient to find Hearn guilty, we affirm the convictions.

### 2. Sentencing

Hearn contends on appeal that the district court made numerous errors in sentencing him.

#### a. *Mandatory Life Sentence*

Hearn contends that the district court erred in its interpretation of the mandatory-life-sentence provision of Minn. Stat. § 609.109 (1998). The state agrees with Hearn's analysis. Whether the district court properly construed a statute is a question of law, which this court reviews de novo. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996).

A person who has been indicted and convicted of a crime under Minn.Stat. § 609.342 (1998), and who has "two previous sex offense convictions" under sections 609.342, .343, or .344 (1998), must be sentenced to life imprisonment. Minn.Stat. § 609.109, subd. 3.

To meet the definition of "previous sex offense convictions" 15 years must not have elapsed since the offender was discharged from the sentence for the second conviction. Minn.Stat. § 609.109, subd. 5.

Hearn had been convicted of aggravated rape in 1971, third-degree criminal sexual conduct in 1978, and fourth-degree crimi-

nal sexual conduct in 1989. He was discharged from the sentence on the second conviction in 1984, more than 15 years before the current conviction. Although the 15–year limit does not bar consideration of Hearn's conviction of fourth degree criminal sexual conduct, that offense is governed by Minn.Stat. § 609.345 (1998), which is not one of the provisions that qualifies a crime as a "previous sex offense" for purposes of the mandatory-life-sentence provision. Thus, the district court erred in imposing a life sentence under Minn.Stat. § 609.109, and Hearn is entitled to be resentenced.

Furthermore, it does not appear that the mandatory-life-sentence provision of Minn.Stat. § 609.109 contemplates a conviction for an attempted crime as a qualifying offense.

We reverse and remand as to this sentence.

### b. *Concurrent Sentences for Criminal Sexual Conduct Crimes*

 Hearn also argues, and the state concedes, that the district court erred when it sentenced Hearn for both attempted first-degree criminal sexual conduct and second-degree criminal sexual conduct, in violation of Minn.Stat. § 609.035, subd. 1 (Supp.1999) (disallowing sentencing for more than one offense arising out of one course of conduct). The district court found the sex crimes to have been part of a single behavioral incident and apparently relied on Minn.Stat. § 609.035, subd. 6 (2000), which specifically permits sentencing for multiple criminal-sexual-conduct convictions arising out of one course of conduct. However, this provision was not in effect at the time of Hearn's offenses. *See* Minn.Stat. § 609.035 (Supp.1999) (containing no subdivision six). Because the district court's sentencing of both sex offenses violates the law in effect at the time

of the crime, we reverse and remand. Although both convictions may stand, only one sentence may be imposed. Hearn is entitled to be resentenced.

### c. *Durational Departures*

 The district court imposed the statutory maximum sentences for second-degree criminal sexual conduct, a fivefold departure from the presumptive 58–month sentence, and for kidnapping a tenfold departure from the presumptive 48–month sentence. Hearn contends that the sentences exaggerate the criminality of his conduct and thus constitute an abuse of the court's discretion. A reviewing court will reverse the district court's decision to depart from the presumptive sentence only if the district court has abused its discretion. *State v. Givens*, 544 N.W.2d 774, 776 (Minn.1996).

The district court based its departure for criminal sexual conduct in the second degree on its finding that Hearn is a patterned sex offender. *See* Minn.Stat. § 609.108, subds. 1, 5 (1998). The statute permits the imposition of the maximum statutory sentence if the court finds that the defendant's crime "was part of a predatory pattern of behavior that had criminal sexual conduct as its goal." Minn.Stat. § 609.108, subd. 1(1) (1998). The imposition of the statutory maximum sentence is a departure from the sentencing guidelines. Minn.Stat. § 609.108, subd. 5 (1998).

Hearn does not dispute the district court's finding that he is a patterned sex offender, but argues only that the imposition of the statutory maximum sentence exaggerated the criminality of his conduct. We hold that the court did not abuse its discretion in sentencing Hearn to the statutory maximum sentence for second-degree criminal sexual conduct.

**33**

Hearn has a 30–year history of predatory sex crimes. He has undergone sex-offender treatment twice without success. He has demonstrated the clear likelihood that he will reoffend. *See State v. Stirens,* 506 N.W.2d 302, 305 (Minn.1993) (the patterned sex-offender statute seeks to extend an offender's sentence based on his potential for reoffending). In *Stirens, id.* at 306, the supreme court upheld a sixfold departure for criminal sexual conduct in the second degree; and in *State v. McCoy,* 631 N.W.2d 446 (Minn.App.2001), we upheld a fourfold departure for criminal sexual conduct in the second degree. In light of Hearn's current conduct, his past predatory history, and caselaw approving substantial departures for similar crimes, the sentence did not exaggerate the criminality of Hearn's offense, and we affirm.

■ In departing from the presumptive sentence for kidnapping, the court found Hearn to be a dangerous and repeat felon under Minn.Stat. § 609.1095, subd. 2 (2000). Hearn has not contested that finding. The statute allows the court to impose "an aggravated durational departure from the presumptive imprisonment sentence up to the statutory maximum * * *." *Id.* The court imposed the statutory maximum sentence of 480 months, a tenfold departure from the presumptive sentence of 48 months.

The record supports the court's finding that Hearn has a long history of repeat violent crimes. That history coupled with his current kidnapping crime support the conclusion that Hearn is a danger to public safety. Although a tenfold durational departure is greater than reported in the caselaw, Hearn's dangerousness is well documented, as is his recidivism. Accordingly, we hold that the sentence was within the district court's discretion, and we affirm.

d. *Consecutive Sentence for Kidnapping*

The district court sentenced the kidnapping offense consecutively to the sex-offense sentences. Hearn contends that there was no proper basis for a consecutive sentence.

■ In sentencing the sex offenses, the court departed durationally, using as departure grounds Hearn's status as both a patterned sex offender and a dangerous offender. These are appropriate grounds for a durational departure, but they cannot be used to also support a consecutive sentence for kidnapping. *See State v. Halvorson,* 506 N.W.2d 331, 339–40 (Minn.App. 1993) (although patterned sex-offender statute supports durational departure, that status is alone insufficient to also support a departure by consecutive sentencing for kidnapping); *see also* Minn. Sent. Guidelines cmt. II.F.04 (stating that additional aggravating circumstances are required to impose an upward departure and a consecutive sentence for circumstances that involve one victim and a single course of action).

The state concedes that consecutive sentencing for kidnapping is proper only if additional aggravating circumstances exist. Hearn argues that there are no additional aggravating circumstances here.

The district court did not identify the aggravating factors on which it relied in imposing a consecutive sentence, but it did refer generally to B.A.M.'s vulnerability because of intoxication, Hearn's cruel treatment of B.A.M., and the injuries Hearn inflicted on B.A.M.

We held in *Halvorson,* 506 N.W.2d at 340, that

[e]ven when status as a patterned sex offender is one of the aggravating circumstances present in a case, a [district] court may not depart durationally and

with respect to consecutive service unless severe aggravating circumstances are present that would justify imposition of a term longer than twice the presumptive sentence.

The alleged vulnerability of B.A.M. is not supported by the record and cannot constitute a departure factor. B.A.M. testified that, although she had been intoxicated earlier in the day, by the time she left the bar with Hearn she was only "buzzed" and not drunk. Additionally, nothing in the record supports an inference that B.A.M. was physically or mentally impaired from alcohol or drugs at the time of Hearn's crimes.

Force and injury cannot be used as departure grounds because they are elements of the sex offenses. *See* Minn.Stat. §§ 609.342, subd. 1(e)(i); .343, subd. 1(e)(i) (elements of the crimes include whether defendant caused victim personal injury or whether defendant used force). *See also State v. Ahern*, 349 N.W.2d 838, 841 (Minn. App.1984) (holding that departure cannot be based on factors included in elements of offense). At oral argument the state conceded that B.A.M.'s injuries, inflicted with force, are improper departure grounds.

The court noted that Hearn left B.A.M. in an unsafe place. This factor cannot be relied upon for departure because it is an element of kidnapping. *See* Minn.Stat. § 609.25, subd. 2(2) (1998) (absence of release to "safe place" is element of kidnapping).

Finally, the court noted that Hearn treated B.A.M. with particular cruelty by threatening to kill her and by playing a "cat and mouse game" with her. We hold that, in light of caselaw, this conduct alone does not constitute a severe aggravating factor.

■ There is no clear line past which some aggravating circumstances become severe, and "[t]here is no easy-to-apply test to use in making this decision." *State v. Norton*, 328 N.W.2d 142, 146 (Minn. 1982). The difference between "aggravating" and "severe aggravating" circumstances is based on an assessment of "collective collegial experience in reviewing a large number of criminal appeals." *Id.*

In light of caselaw in which severe aggravating circumstances were found, we hold that the purported particular cruelty in this case does not rise to the level of severe aggravating circumstances. *Compare Rairdon v. State*, 557 N.W.2d 318, 327 (Minn.1996) (finding multiple forms of sexual abuse inflicted on a young child, vulnerability of victim, and particular cruelty constituted severe aggravating circumstances); *State v. Butterfield*, 555 N.W.2d 526, 531–32 (Minn.App.1996) (finding multiple penetrations each of three types, allowing victim to lie unclothed on the ground in 45–degree weather for more than two hours, threatening the victim with a knife constituted severe aggravating circumstances), *review denied* (Minn. Dec. 17, 1996), *with State v. Branson*, 529 N.W.2d 1, 5 (Minn.App.1995) (in conviction of assault and kidnapping finding no severe aggravating circumstances where victim grabbed at knife point, threatened but broke free before she was harmed further), *review denied* (Minn. Apr. 18, 1995). Thus, we reverse and remand for resentencing.

### 3. *Pro se Issues*

We have also considered appellant's pro se issues regarding his right to be present while jurors are questioned, his right to a jury of his peers, his right to present evidence, and his claim of ineffective assistance of counsel. On this record and on applicable law, we find no merit in appellant's pro se arguments.

## DECISION

The evidence supports appellant's convictions, and the district court did not abuse its discretion by departing upwardly to impose maximum sentences for second-degree criminal sexual conduct and kidnapping. But the district court erred by imposing a mandatory life sentence, concurrent sentences for appellant's criminal-sexual-conduct convictions, and consecutive sentences for kidnapping.

**Affirmed in part, reversed in part, and remanded.**