**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Eugene Paul GLARATON, Jr.,
Respondent.**

No. C9–87–893.

Supreme Court of Minnesota.

July 15, 1988.

---

832

Mollie Raskind, Deputy State Public Defender, Minneapolis, for petitioner, appellant.

Mark Lystig, Asst. Dakota County Atty., Hastings, for respondent.

KELLEY, Justice.

This appeal presents the issue whether the court of appeals erred when it vacated a 240–month sentence following respondent's conviction of criminal sexual conduct in the first degree. The original sentence imposed by the trial court represented a departure slightly more than four times the maximum presumptive sentence duration provided in the Minnesota Sentencing Guidelines (58 months when offense was committed by one having a criminal history of 1). We hold the court of appeals properly affirmed the respondent's conviction; but we hold it erred in ruling that the departure was excessive. Therefore, we modify the decision of the court of appeals by reinstating the sentence imposed by the trial court.

On October 28, 1986, the victim, a 15–year–old boy, was in ninth grade. Respondent had just turned 18 and was a school dropout. As the victim walked home after basketball practice respondent, whom he did not know, stopped him and asked the time. After the victim replied, respondent pulled out a pistol (it looked like a .22 caliber pistol but after respondent's arrest it was determined in fact to be an unloaded air pistol for shooting BB's). He then started threatening the victim with the pistol, saying he had killed 20 people with it and might shoot the victim. As they ap-

proached the victim's house the victim's mother was backing out the driveway. She observed the respondent and assumed that he was a new acquaintance of her son from school; she did not see that respondent had a gun inside his jacket pointed at the victim. The victim, who was too frightened to tell her what was happening, simply said "Hi" to her as she drove away. The victim was then forced to walk to an area approximately 2 feet wide between two nearby garages. There, with the gun pointed at the victim's head, respondent made the victim fondle his penis. Then he compelled the victim to drop his pants and forced him to spit on and lick respondent's penis. Then he forced the victim to submit to anal intercourse for 10 to 15 minutes. The victim felt that respondent ejaculated. Respondent also touched the victim's penis with his hand and with his mouth. While the victim was standing, respondent banged his head against the garage, after which respondent made the victim lie down and he lay on top of the victim. The barrel of the gun was inserted in both the victim's mouth and in his rectum. Respondent hit him in the nose and stomach with the gun, licked some of the victim's blood (which he said tasted "good"), and walked and bounced on the victim's back. Respondent asked the victim if he was a Christian (apparently because the victim had some religious materials on his person) and, when the victim said yes, respondent said, "I hate Jesus," and made the victim get on his knees and, saying, "Here, Christian," urinated on the victim's face. Respondent departed only after making the victim lie with his face in the urine and telling him to count to 50.

The victim ran home immediately and told his parents that he had been "raped" by a "faggot." The parents called the police who, shortly thereafter, arrested respondent as he was walking a short distance away. Initially respondent denied that he assaulted anyone. The victim meanwhile was taken to the hospital, where he received treatment for his cuts. One of these apparently was a permanently disfiguring cut.

Later, at trial, respondent admitted that he had physically assaulted the victim but denied that the assault had any sexual component. However, when being examined at the state security hospital at St. Peter, he admitted that he had raped the victim, saying that he did it because he was upset with his girl friend and wanted to take out his anger on someone.

Under the Minnesota Sentencing Guidelines, the presumptive sentence would be 54 (50–58) months in prison, given respondent's criminal history score of one (based on his juvenile record). The trial court imposed the statutory maximum for the offense under Minn.Stat. § 609.342, subd. 2 (1986), 20 years. In doing so the court stated on the record that it based its conclusion that severe aggravating circumstances were present on a number of factors including (a) the fact that respondent penetrated the victim in three different ways (fellatio by and on the victim and anal penetration of the victim), (b) the gratuitous physical assault of the victim, (c) the permanent nature of the injury inflicted on the victim, (d) the making of death threats, and (e) the infliction of psychological trauma.

In affirming the conviction but holding that the departure was excessive, the court of appeals pointed to the fact that the people who examined respondent at St. Peter stated that they did not think respondent was a "patterned sexual offender." *State v. Glaraton,* No. C9–87–893 (Minn. App. filed Feb. 16, 1988) (unpublished opinion) [available on WESTLAW, 1988 WL 10452]. It likewise noted that although respondent had a criminal history score of one, his 240–month sentence was the same as the one imposed on a compulsive sex offender having a criminal history score of two in *State v. Herberg,* 324 N.W.2d 346 (Minn.1982). In vacating the sentence and remanding for resentencing, the majority mandated that the trial court consider mitigating factors and also clearly indicated that the trial court could not reimpose a 240–month sentence because the sentence

was excessively harsh. *Glaraton.* In a concurring opinion Judge Huspeni agreed with the majority decision to remand for resentencing but she disagreed with the conclusion that the 240–month sentence was excessive. *Glaraton.*

■ Generally, when aggravating circumstances are present, the upper limit on a durational departure is double the Sentencing Guidelines maximum presumptive sentence duration. *State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981). But when the aggravating circumstances are severe, the doubling limit of *Evans* does not apply. *State v. Stumm,* 312 N.W.2d 248, 249 (Minn.1981). Whether severe aggravating circumstances are present is a decision which, "[i]n the final analysis * * * must be based on our collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts." *State v. Norton,* 328 N.W.2d 142, 146–47 (Minn.1983).[1]

In the instant case the respondent stuck the gun in the victim's mouth and in his rectum, causing the victim to think that he was going to die a horrible death. The victim was also subjected to multiple acts of penetration. Respondent inflicted gratuitous physical injury (including, apparently, a permanent scar) and psychological injury (perhaps of a permanent nature). Additionally, he urinated on the victim's face and made him lie face down in the urine; and ridiculed his religious beliefs. We conclude, as we did in *Herberg* under similar circumstances, that severe aggravating circumstances were present and that therefore a departure of greater than two times the presumptive sentence duration by the trial court was justified.

■ In *State v. Mortland,* 399 N.W.2d 92, 94 n. 1 (Minn.1987), we made it clear

that when, as here, severe aggravating circumstances are present, the only *absolute* limit on sentence duration for the offense is that provided by the legislature in the statutory definition of the offense. This, of course, does *not* mean that when severe aggravating circumstances are present the trial court should automatically impose the maximum sentence permitted for the offense. As we said in *State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981), when we adopted the general doubling limit, "this is only an upper limit and we do not intend to suggest that trial courts should automatically double the presumptive sentence length in all cases in which upward departure is justified nor do we suggest that we will automatically approve all departures of this magnitude." Similarly, while the statutory maximum is the upper limit on sentence length that applies in cases in which severe aggravating circumstances are present, trial courts should not automatically impose the statutory maximum each time severe aggravating circumstances are present. Moreover, appellate courts should not automatically affirm all sentences imposing the statutory maximum even though some severe aggravating circumstances may exist. Therefore, if the facts support the conclusion that the 240–month sentence was excessive, the decision of the court of appeals panel should be affirmed.

■ However, because we conclude that the court of appeals panel holding was based primarily on failure to consider the trial court record as a whole, we disagree with its holding that *State v. Herberg,* 324 N.W.2d 346 (Minn.1987) is controlling. As indicated, the court of appeals felt respondent's sentence should be less than Herberg's because respondent had a criminal history score of one and is not a compulsive

---

**1.** Relevant cases in which we have upheld greater than double durational departures include: *State v. Hatton,* 409 N.W.2d 854 (Minn.1987); *State v. Mortland,* 399 N.W.2d 92 (Minn.1987); *State v. VanGorden,* 326 N.W.2d 633 (Minn. 1982); *State v. Herberg,* 324 N.W.2d 346 (Minn. 1982); *State v. Stumm,* 312 N.W.2d 248 (Minn. 1981).

Among the decisions of the court of appeals, *see State v. Mesich,* 396 N.W.2d 46 (Minn.App.1986), petition for review denied (Minn.1987) [cited favorably in *State v. Mortland,* 399 N.W.2d 92, 94 at n. 1 (Minn.1987) ].

or patterned sex offender, and, therefore, it held the trial court had erred in failing to give weight to those perceived differences. We conclude that a distinction based on those perceived differences, in the light of the record, is unjustified. We note that its conclusion ignores that part of the report from doctors at the St. Peter State Hospital which states, in part, that "(defendant) is a very dangerous individual, likely to assault others in the future if left to his own devices." Moreover, the mere fact that respondent's criminal history score was one, whereas Herberg's was two, is not the sort of distinction that compels the conclusion that the trial court had to impose a lesser sentence than imposed on Herberg. *Cf. State v. Vazquez*, 330 N.W.2d 110 (Minn.1983).

Accordingly, we hold that the court of appeals panel correctly affirmed respondent's conviction, but that it erred in holding the sentencing departure to be excessive. Therefore, we reverse and reinstate the sentence imposed by the trial court.