STATE of Minnesota, Respondent,

v.

Scott Lawrence BUTTERFIELD,
Appellant.

No. C9–95–2463.

Court of Appeals of Minnesota.

Oct. 15, 1996.

Review Denied Dec. 17, 1996.

*Dep't of Public Safety,* 494 N.W.2d 884, 884–85 (Minn.1993).

Hubert H. Humphrey, III, Attorney General, St. Paul, for Respondent.

Robert M.A. Johnson, Anoka County Attorney, M. Katherine Doty, Assistant County Attorney, Anoka, for Respondent.

John M. Stuart, State Public Defender, Susan J. Andrews, Assistant State Public Defender, Minneapolis, for Appellant.

Considered and decided by KLAPHAKE, P.J., TOUSSAINT, C.J., and PETERSON, J.

## OPINION

PETERSON, Judge.

On appeal from convictions for kidnapping and first-degree criminal sexual conduct, Scott Butterfield argues that the facts do not warrant a 544–month prison term. We affirm as modified.

## FACTS

At 8:30 p.m. on April 19, 1995, appellant Scott Butterfield approached L.L. at a gas station and asked her to give him a ride to a nearby bar. L.L. agreed. As L.L. drove through a secluded park, Butterfield told her to stop the car. When L.L. stopped the car, Butterfield turned it off, grabbed the keys, and told L.L. that he wanted to have sex with her.

When L.L. refused, Butterfield pulled out a knife. He held it six to eight inches from L.L. and told her to get out of the car and take off her clothes. L.L. again refused, but Butterfield pushed her out the driver's side door and crawled out after her. As L.L. continued to struggle, Butterfield threw her on the ground. When L.L. screamed, Butterfield hit her in the face twice with something hard. L.L. saw stars and may have briefly lost consciousness. Butterfield then pinned L.L. to the ground. Because of Butterfield's knife, strength, speed, and threatening statements, L.L. believed that her best hope of survival was to cooperate with him.

Consequently, when Butterfield again ordered L.L. to get undressed, she took off her clothes. It was so cold outside that L.L. was shaking. Butterfield forced L.L. to put his penis in her mouth, then told her to turn over onto her hands and knees. Butterfield then had vaginal and anal intercourse with her. When Butterfield lost his erection, he forced L.L. to turn over and perform oral sex again. This process was repeated twelve to fifteen times over the next two hours. Butterfield never let go of L.L. during this time.

Butterfield also told L.L. to call him "Daddy" and to answer every question with "Yes, Daddy" or "No, Daddy." Butterfield asked L.L. if she wanted to have sex with Uncle Steve.[1] When L.L. said no, Butterfield asked her if she would have sex with Uncle Steve if Butterfield wanted her to. L.L. had to reply "If you want me to, Daddy, then I will have sex with him." Butterfield asked similar questions about other people and L.L. had to say she would have sex with them if "Daddy" wanted her to. When a car drove by during the assault, Butterfield told L.L. that if the police were in that car and she told them that he raped her, he would shoot and kill her right in front of them. L.L. did not doubt that Butterfield had a gun or that he would carry out this threat. During the assault, L.L. told Butterfield that she had to go to the bathroom. He ignored her at first, then forced her to continue performing oral sex while she urinated.

Around 11:30 p.m., Butterfield told L.L. that he wanted to go somewhere else. He allowed her to put on her sweater. Butterfield then forced L.L. to perform oral sex while he drove her car. At about midnight, Butterfield stopped at a trailer park. There, he told L.L. to put her pants back on and then forced her to enter a trailer.

The trailer was very cold and Butterfield said it had no heat, electricity, water, or telephone. Butterfield forced L.L. to sit on a couch while he built a fire. Butterfield then told L.L. to take off her clothes and to go over to a blanket on the floor. There, Butterfield forced L.L. to perform oral sex. After a few minutes, Butterfield told L.L. to turn over onto her hands and knees. Then, he penetrated her vaginally and anally. When Butterfield lost his erection, he got upset and told L.L. to turn around and perform oral sex again. This pattern continued for two to three hours. Butterfield also performed oral sex on L.L. and forced her to fondle his genitals. During this time, L.L. had to continue calling Butterfield "Daddy." Butterfield also mentioned the name "Stacy."[2]

---

1. Butterfield testified that he had a brother named Steve.

2. Butterfield testified that he had a sister named Stacy.

L.L. had to pretend that she wanted Butterfield as much as he wanted her. Butterfield told L.L. to lie back on the couch in a seductive manner and to put one leg up on the back of the couch. Butterfield then pretended to come home and see L.L. in this provocative position. L.L. had to give Butterfield the answers that he told her to give to his questions. Butterfield became irritated when L.L. did not give the answers that he wanted and started the game over again.

At about 3:00 a.m., Butterfield moved L.L. to a bedroom. In the bedroom, Butterfield continued the same pattern of assaulting L.L. for another two hours. Butterfield then said "I better pull out or—so there isn't any evidence." He then ejaculated on L.L.'s back. L.L. lay on the bed exhausted while Butterfield sat on the edge of the bed next to her. L.L. talked to Butterfield and tried to be nice to him because she thought that befriending him would give her a better chance of surviving and escaping.

L.L. eventually fell asleep. When she awoke, it was light outside. Butterfield let L.L. go to the bathroom. There, she saw in the mirror that her face was swollen and that her eye was nearly swollen shut. L.L. was wrapped in a blanket because Butterfield would not allow her to get dressed. At one point, Butterfield went outside to try to turn on the water, but he was never far enough away from the trailer to allow L.L. to escape. Later, someone knocked on the door and Butterfield told L.L. to go into the bedroom and to be quiet. L.L. heard voices but did not reveal herself because she was afraid the visitor was one of Butterfield's friends, and she did not want to put herself in a situation involving two men. L.L. also thought that Butterfield soon would release her because he repeatedly told her that they would be leaving soon.

Late in the afternoon, Butterfield said he wanted to have sex again. L.L. started crying but Butterfield ignored her. He ordered L.L. to get undressed and to perform oral sex on him. He then ordered her to lie on the couch where Butterfield had vaginal intercourse with her. This assault continued for about one-half hour.

Butterfield and L.L. left the trailer at about 6:30 or 7:00 p.m. L.L. assumed Butterfield had a knife in the case he was wearing on his belt. After driving back to the park and spending about 15 to 20 minutes there looking for a beeper that Butterfield had lost the night before, L.L. followed his directions to a church parking lot. There, Butterfield said he paid at least $100 for a prostitute in Reno and wanted to give L.L. the same amount. To get rid of Butterfield, L.L. finally agreed that he could leave this money for her at the gas station where they had met. Butterfield then got out of the car and walked away.

When L.L. was sure that Butterfield was too far away to catch her, she drove home and immediately reported the assault. The doctor who examined L.L. after the assault said that she had a black eye and bruises on her right collarbone, back, and right foot. The doctor also said an x-ray showed L.L. might have suffered a broken nose but he could not be certain because the film was over-penetrated by radiation.

Butterfield was charged by complaint with two counts of kidnapping and seven counts of first-degree criminal sexual conduct. The officer who arrested Butterfield recovered a knife and a sheath from him. At trial, Butterfield admitted that he had oral, vaginal, and anal sex with L.L. in the park and the trailer and had oral sex with her in the car but claimed that these acts were consensual. Butterfield explained that L.L. had fallen and hit her head in the trailer's bathroom. Butterfield said L.L. had lied about the assaults because he did not want to have a relationship with her and because she had spent 24 hours with him and needed a story to tell her fiancee.

The jury found Butterfield not guilty of first-degree criminal sexual conduct involving the use of a dangerous weapon in the trailer but guilty of the other eight charges. The state sought a sentencing departure with regard to duration and consecutive service. At the sentencing hearing, L.L. testified that her family had been traumatized by her ordeal and that her daughters had nightmares and could not sleep. L.L. said she had uncontrollable flashbacks of the incident, which

caused her to start shaking, turn white, and suffer panic attacks. L.L. said she could not return to work as a day care provider because of the flashbacks and "the way I am" after the assault. L.L. said she needed counseling. During trial, L.L.'s fiance indicated that after the assault, L.L. was more paranoid, always locked doors, and was afraid to go out alone at night.

The district court determined that the assaults in the park, the car, and the trailer were three separate behavioral incidents. The court sentenced Butterfield to a 330–month term for his conviction for first-degree criminal sexual conduct involving fear of great bodily harm in the park. To support this triple durational departure, the court cited the three types of penetration, the use of a dangerous weapon, the threats to the victim, the injury to the victim, and particular cruelty consisting of forcing L.L. to remove her clothing in 45–degree weather, to lie in the grass and dirt, and to perform oral sex while she urinated.

The court then sentenced Butterfield to a 42–month consecutive term for his conviction for kidnapping. *See* Minn.Stat. § 609.25, subd. 1(2) (1994) (confining another without her consent to facilitate commission of felony). The court said this double durational departure and departure with respect to consecutive service was justified by the fact that the offense occurred in four different locations, the psychological trauma to the victim, the use of a knife, and the verbal threats. The court sentenced Butterfield to the presumptive 134–month concurrent term for his conviction for first-degree criminal sexual conduct involving fear of great bodily harm in the car.

Finally, the court sentenced Butterfield to a consecutive 172–month sentence for his conviction for first-degree criminal sexual conduct involving fear of great bodily harm in the trailer. The court said this was a double durational departure and a departure as to consecutive service that was justified by the length of the assault, the multiple types of penetration repeated numerous times, and extreme mental cruelty consisting of forcing L.L. to play sexual games and to assume sexual poses. The aggregate sentence imposed was 544 months.

## ISSUES

1. Did the district court err in determining the assaults in the park, the car, and the trailer were separate behavioral incidents?

2. Did the district court abuse its discretion in sentencing Butterfield?

## ANALYSIS

■ 1. Whether offenses were part of a single behavioral incident is a fact determination that will not be reversed on appeal unless clearly erroneous. *Effinger v. State,* 380 N.W.2d 483, 489 (Minn.1986).

Minn.Stat. § 609.035, subd. 1 (1994), provides:

> Except as provided in \* \* \* section[ ] 609.251 [double jeopardy exception for kidnapping] \* \* \*, if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses \* \* \*.

Minn.Stat. § 609.035, subd. 1, "ensures that punishment is commensurate with the crime committed." *State v. Bookwalter,* 541 N.W.2d 290, 294 (Minn.1995). "If section 609.035 applies, multiple sentencing is prohibited, including the imposition of concurrent sentences." *State v. O'Hagan,* 474 N.W.2d 613, 622 (Minn.App.1991), *review denied* (Minn. Sept. 25, 1991).

■ "Whether multiple offenses arose out of a single behavior incident depends on the facts and circumstances of the particular case." *Bookwalter,* 541 N.W.2d at 294. To determine whether two intentional offenses arose out of the same behavioral incident, we "consider the factors of time and place and whether a defendant is motivated by a single criminal objective." *Id.*

> "[T]he essential ingredient of any test is *whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective.*"

*Id.* (quoting *State v. Johnson,* 273 Minn. 394, 404, 141 N.W.2d 517, 525 (1966)).

■ Butterfield argues the district court erred in imposing multiple sentences for the

assaults in the park, the car, and the trailer because those offenses were part of the same behavioral incident. Butterfield apparently concedes that the three assaults occurred at different times and in different places, but argues they all were motivated by the same criminal objective—to satisfy his sexual needs. Butterfield relies on *State v. Herberg*, 324 N.W.2d 346 (Minn.1982), to support his argument that moving L.L. to three different locations did not destroy his unity of purpose in committing the crimes.

But this court has held that a defendant's desire to satisfy his perverse sexual desires is too broad a motivations to justify application of the single behavioral incident rule. *State v. Secrest*, 437 N.W.2d 683, 685 (Minn. App.1989), *review denied* (Minn. May 24, 1989). Further, in *Herberg*, the supreme court explained:

> Defendant moved the victim to a different place before committing the second act of penetration only because he feared that the first location was too open and that they might be noticed. His underlying motivation remained the same: to satisfy his perverse sexual needs by assaulting, penetrating, and degrading the victim in various ways.

*Id.* at 349.

Here, Butterfield did not move L.L. to a different place because he feared detection. Nor did any other external force prompt Butterfield to stop each assault and move L.L. to another location and assault her again. Butterfield stopped his assaults and moved L.L. to a new location to serve his own whims. Given these facts, the district court did not clearly err in determining Butterfield had a separate and distinct criminal objective for each assault. Because the assaults in the park, the car, and the trailer had no unity of time, location, or purpose, they were separate behavioral incidents, and the district court did not err in imposing a sentence for each assault.

■ 2. The decision to depart from the sentencing guidelines rests within the district court's discretion and will not be reversed on appeal absent an abuse of discretion. *State v. Givens*, 544 N.W.2d 774, 776 (Minn.1996). The district court may depart from the guidelines only if substantial and compelling aggravating circumstances are present. *Id.;* Minn. Sent.Guidelines cmt. II.D.01.

**A. Triple durational departure for assault in the park**

Generally, when aggravating circumstances are present, the upper limit on a durational departure is double the Sentencing Guidelines maximum presumptive sentence duration. But when the aggravating circumstances are severe, the doubling limit * * * does not apply.

*State v. Glaraton*, 425 N.W.2d 831, 834 (Minn.1988) (citation omitted). When severe aggravating circumstances are present, the only limit on the duration of the sentence is the statutory maximum sentence for the offense. *Id.*

> [T]here is no clear line that marks the boundary between "aggravating circumstances" justifying a double departure and "severe aggravating circumstances" justifying a greater than double departure. In the final analysis, our decision whether there were "severe aggravating circumstances" must be based on our collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts.

*State v. Norton*, 328 N.W.2d 142, 146–47 (Minn.1982).

■ Butterfield concedes that the facts here support a double durational departure but argues the aggravating circumstances were not severe and therefore are insufficient to support a triple durational departure. We disagree. Multiple penetrations alone can support a double durational departure. *State v. Allen*, 482 N.W.2d 228, 232 (Minn. App.1992), *review denied* (Minn. Apr. 13, 1992). Here, Butterfield not only subjected L.L. to multiple types of penetration, but also repeated all three types of penetration 12 to 15 times during the two-hour assault in the park. *See Glaraton*, 425 N.W.2d at 832–35 (penetration of victim in three different ways was aggravating factor supporting greater than quadruple departure); *State v. Van Gorden*, 326 N.W.2d 633, 634–35 (Minn. 1982) (three types of penetration was aggra-

vating factor supporting more than triple durational departure).

Moreover, Butterfield acted with particular cruelty. *See* Minn.Sent.Guidelines II. D.2.b(2) (treating victim with particular cruelty is aggravating factor). He forced L.L. to remain unclothed in the dirt in 45–degree weather for over two hours. *Cf. State v. Hamilton*, 348 N.W.2d 112, 115 (Minn.App. 1984) (leaving victim naked in garage in 18–degree temperatures was gratuitous cruelty), *review denied* (Minn. July 26, 1984). Butterfield hit L.L. so hard that he blackened her eye, bruised her face, and possibly broke her nose. *See State v. Strommen*, 411 N.W.2d 540, 544–45 (Minn.App.1987) (repeated punches to victim's face to make her submit to rapists' demands was aggravating factor supporting greater than quadruple durational departure), *review denied* (Minn. Oct. 28, 1987).

Butterfield also threatened to kill L.L. and threatened her with a knife. *See State v. Mortland*, 399 N.W.2d 92, 95 (Minn.1987) (threats to kill victim provided support for greater than double durational departure). Finally, Butterfield forced L.L. to call him "Daddy," to say she would have sex with different people if "Daddy" wanted her to, and to perform oral sex while she urinated. *See State v. Mesich*, 396 N.W.2d 46, 53 (Minn.App.1986) (taunts, threats, and degradation of victim constituted emotional abuse that made offense more serious than typical sexual assault), *review denied* (Minn. Jan. 2, 1987). Given these facts, we conclude that this was one of the rare cases where severe aggravating circumstances justify a triple durational departure. *See Glaraton*, 425 N.W.2d at 833–35 (quadruple departure upheld when defendant put gun in victim's orifices, penetrated victim three ways, inflicted gratuitous physical injury leaving permanent scar, urinated on victim, forced victim to lie face down in urine, and ridiculed victim's religious beliefs); *Van Gorden*, 326 N.W.2d at 633–35 (greater than triple departure upheld when defendant inflicted permanent injury on 66–year–old victim, forced her to submit to three different types of penetration, invaded her zone of privacy, and

dragged her outside her home, thereby increasing her fear).

**B. Kidnapping sentence**

Minn.Stat. § 609.251 (1994), provides that a prosecution for or conviction of the crime of kidnapping is not a bar to conviction of or punishment for any other crime committed during the time of the kidnapping.

When a defendant is sentenced for both kidnapping and a crime that was committed during the kidnapping, the sentences are presumed to be concurrent. *State v. Halvorson*, 506 N.W.2d 331, 340 (Minn.App. 1993). The district court may order that the sentences imposed for kidnapping and an offense committed during the kidnapping run consecutively, but such a sentence is a departure from the guidelines that must be support by aggravating circumstances. *Id.* Further, a district court may not depart durationally and with respect to consecutive service on these sentences unless severe aggravating circumstances are present that would justify imposition of a sentence longer than double the presumptive term. *Id.*

Butterfield argues the district court erred in sentencing him to a consecutive term for his kidnapping conviction because the confinement of L.L. was connected solely to the commission of the sexual assaults. *See State v. Crocker*, 409 N.W.2d 840, 845 (Minn.1987) (multiple sentences can unfairly exaggerate criminality of defendant's conduct when confinement is connected solely to crimes committed during course of kidnapping). But here, Butterfield confined L.L. in his trailer for nearly 19 hours. Because Butterfield did not spend this entire time assaulting L.L., the kidnapping was not solely incidental to the commission of the sexual assault.

Butterfield next argues the district court abused its discretion in sentencing him to durational and consecutive service departures because severe aggravating circumstances were not present in the commission of the kidnapping. We agree.

In sentencing the defendant for kidnapping, the court can consider what

happened during the kidnapping. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981), *overruled in part by State v. Givens,* 544 N.W.2d 774, 777 n. 4 (Minn.1996) (holding that defendant may waive right to be sentenced under guidelines). But the court cannot rely on the elements of an assault committed during the kidnapping to depart on the kidnapping sentence when the defendant also was sentenced for the assault. *See State v. Coley,* 468 N.W.2d 552, 556 (Minn.App.1991) (district court properly relied on elements of assault to depart on kidnapping sentence when defendant was not sentenced for assault); *see also State v. Spaeth,* 552 N.W.2d 187, 196 (Minn.1996) (district court improperly used conduct that resulted in murder conviction and sentence to justify aggravated term for burglary during which murder was committed).

To justify the departure here, the district court cited the length of the kidnapping, the fact that Butterfield moved L.L. to four different locations, the psychological damage inflicted on L.L., the use of the knife, and the repeated verbal threats. These aggravating factors do not constitute the severe aggravating circumstances necessary to support departures with respect to duration and consecutive service. Accordingly, we reverse the sentence imposed for the kidnapping. It is clear that the district court intended to impose on Butterfield the maximum permissible sentence under the guidelines. A remand, therefore, is unnecessary. *State v. Pince,* 358 N.W.2d 435, 438 (Minn.App.1984), *review denied* (Minn. Mar. 6, 1985). A departure with respect to consecutive service would result in the maximum sentence for Butterfield. *See* Minn.Sent.Guidelines IV–V (sentencing guidelines grid and offense severity table). We, therefore, affirm the departure with respect to consecutive service but reduce the length of the sentence for kidnapping to 21 months.

### C. Sentence for assault in trailer

 The imposition of consecutive sentences for multiple offenses involving the same victim is a departure from the guidelines. *State v. Jones,* 451 N.W.2d 55, 64 (Minn.App.1990), *review denied* (Minn. Feb. 21, 1990). Severe aggravating circumstances must be present to support a durational departure and a departure with respect to consecutive service. *State v. Branson,* 529 N.W.2d 1, 5 (Minn.App.1995), *review denied* (Minn. Apr. 18, 1995).

 Butterfield argues that although the facts here support a double durational departure, they do not constitute the severe aggravating circumstances necessary to justify a departure with respect to consecutive service as well. We disagree. As previously discussed, multiple penetrations alone are sufficient to support the double durational departure. *Allen,* 482 N.W.2d at 232. In this case, Butterfield not only subjected L.L. to five different types of penetration during the assault in the trailer, he also repeated those acts several times over a five-hour period on the morning of April 20, 1995 and then again for one-half hour later that day. *See Glaraton,* 425 N.W.2d at 832–35 (three different types of penetration was aggravating factor supporting more than quadruple departure).

Moreover, Butterfield acted with particular cruelty toward L.L. in committing the assault in the trailer. *See* Minn.Sent.Guidelines II.D.2.b.(2) (treating victim with particular cruelty is aggravating factor). During the five-hour assault in the trailer, Butterfield forced L.L. to call him "Daddy," to assume provocative poses, and to participate in other sexual games. *Cf. Mesich,* 396 N.W.2d at 53 (taunts, threats, and degradation of victim constituted emotional abuse that distinguished offense from typical assault). Finally, due to the assault, L.L. suffered psychological damage that prevented her from returning to work and forced her to seek counseling. *See Branson,* 529 N.W.2d at 5 (psychological effect on victim may support departure). Given these facts, the district court did not abuse its discretion in concluding that the assault in the trailer involved severe aggravating circumstances sufficient to justify the imposition of both a durational departure and a departure with respect to consecutive service.

### DECISION

The district court did not err in imposing multiple sentences for the assaults in the

park, the car, and the trailer because these crimes were three separate behavioral incidents. The triple durational departure imposed for the sexual assault in the park was not an abuse of discretion because it was supported by severe aggravating circumstances. The durational departure and the departure with respect to consecutive service imposed for the kidnapping offense was an abuse of discretion because it was not supported by severe aggravating circumstances. We affirm the departure with respect to consecutive service but reduce the length of the sentence for kidnapping to 21 months. Finally, the durational departure and the departure with respect to consecutive service imposed for the assault in the trailer was not an abuse of discretion because it was supported by severe aggravating circumstances. The total length of Butterfield's sentence is reduced to 523 months.

**Affirmed as modified.**